902 So.2d 822 (2005)
Timothy Thomas KOILE, Appellant,
v.
STATE of Florida, Appellee.
No. 5D04-91.
District Court of Appeal of Florida, Fifth District.
January 7, 2005.
*823 James S. Purdy, Public Defender, and Marvin F. Clegg, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Belle B. Schumann, Assistant Attorney General, Daytona Beach, for Appellee.
MONACO, J.
After the commencement of his trial for first degree murder, Timothy Koile, the appellant, pled no contest to second degree murder pursuant to a plea bargain in which he agreed to a specific incarcerative sentence, followed by probation, and in which he agreed further to pay restitution in an unstipulated amount. The trial court thereafter presided over a hearing on the amount of restitution to be assessed, and later entered an order requiring Mr. Koile to pay restitution totalling more than $2,000,000. The only issues raised by Mr. Koile on appeal concern the assessment of restitution. We affirm in part, and reverse in part.

I. Facts.
At the restitution hearing the victim's father, Patrick Cousins, testified that he had incurred a number of expenses, many of which are not contested, that resulted from his son's murder. Among the uncontested expenses, for example, were funeral and burial costs. He also testified, however, that he elected to attend the three-week trial of Mr. Koile, and that as a result, he lost income of about $12,000. He admitted that he only testified at the trial on a single day. The victim's mother, Roseanne Cousins, indicated that she lost $1,500 in wages during the three-week trial period, and likewise related that she only testified on a single day of the trial. She testified, as well, that a wrongful death suit had been brought, and was still pending against Mr. Koile and his co-defendant, who was the wife of the murder victim.
In addition, the State also presented evidence on behalf of the victim's estate concerning the loss of future income of the victim. It appears that the victim had been a first officer with Air Jamaica, and *824 was compensated with a salary of $87,988 per year. He was expected to be promoted to captain in the future, at which time he would earn $156,882 per year. There was also testimony presented concerning the airline's mandatory retirement plan and pension contributions. To prove up the lost future earnings of the victim, the State called a certified public accountant, who testified that the victim's future income was $3,322,743, assuming his promotion to captain, and assuming that he worked until age 60.
The trial judge took the matter under advisement, and later rendered a written order assessing restitution against Mr. Koile and his co-defendant, jointly and severally. The court awarded the victim's father all of his lost wages for the three week period of the trial, as well as certain other expenses associated with the trial, and awarded the victim's mother all of the $1,500 lost wages that she sought. In addition, the trial judge calculated that the estate of the victim suffered damages or losses in the amount of $2,042,126, which represented the present value of lost future earnings, without engaging in the assumption that the victim would be promoted to captain. The trial judge evidently used the formula testified to by the certified public accountant in order to make this calculation, but made no deductions for living expenses or such things as income taxes that the decedent would have incurred. Mr. Koile timely appealed the restitution order. We address in this appeal the issues of whether it was appropriate to assess as restitution the lost wages of the decedent's parents while attending trial, and the lost future earnings of the decedent.

II. Standard of review and burden of proof.
We review restitution orders using an abuse of discretion standard. See Ashton v. State, 790 So.2d 1115, 1117 (Fla. 5th DCA 2001). The burden of proving the amount of restitution is on the State, and the amount must be proved by a preponderance of the evidence. See § 775.089(7), Fla. Stat. (2001); Santana v. State, 795 So.2d 1112 (Fla. 5th DCA 2001). Restitution must be proved by substantial competent evidence. See Sparkman v. State, 445 So.2d 1115 (Fla. 2d DCA 1984).

III. Restitution generally.
The State asserts that based on its reading of the restitution statute, the awards were lawful. Section 775.089, Florida Statutes (2003), the statute governing restitution as a condition of probation, states in pertinent part that:
(1)(a) In addition to any punishment, the court shall order the defendant to make restitution to the victim for:
1. Damage or loss caused directly or indirectly by the defendant's offense; and
2. Damage or loss related to the defendant's criminal episode, unless it finds clear and compelling reasons not to order such restitution. Restitution may be monetary or nonmonetary restitution. The court shall make the payment of restitution a condition of probation in accordance with s. 948.03...
(b) ...
2. An order of restitution entered as part of a plea agreement is as definitive and binding as any other order of restitution, and a statement to such effect must be made part of the plea agreement...
(c) The term "victim" as used in this section and in any provision of law relating to restitution means each person who suffers property damage or loss, monetary expense, or physical injury or *825 death as a direct or indirect result of the defendant's offense or criminal episode, and also includes the victim's estate if the victim is deceased, and the victim's next of kin if the victim is deceased as a result of the offense. (2)(a) When an offense has resulted in bodily injury to a victim, a restitution order entered under subsection (1) shall require that the defendant:
1. Pay the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care.
...
3. Reimburse the victim for income lost by the victim as a result of the offense.
4. In the case of an offense which resulted in bodily injury that also resulted in the death of a victim, pay an amount equal to the cost of necessary funeral and related services.
(Emphasis added).
For restitution to be deemed reasonable, it must bear a significant relationship to the offense of which the defendant is convicted. See L.H. v. State, 803 So.2d 862, 863 (Fla. 4th DCA 2002). One factor to be considered in this regard is whether there is a causal connection between the criminal conduct and the loss claimed by the victim. Id. Before ordering restitution, therefore, the trial court must find that the loss or damage is causally connected to the offense, either directly or indirectly, and bears a significant relationship to the offense. See Bernard v. State, 859 So.2d 560, 562 (Fla. 5th DCA 2003). The causation and significant relationship tests work in conjunction with, and not independently of, each other. Id. In this connection this Court has previously held that lost wages may provide a sufficient basis for a restitution award. See Graham v. State, 720 So.2d 294, 294 (Fla. 5th DCA 1998); see also Hollingsworth v. State, 835 So.2d 373 (Fla. 1st DCA 2003).

IV. Lost wages for next of kin for attendance at trial.
Consider, first, whether the statute permits an award of lost wages to the parents of the decedent. The definition of victim contained in the statute specifically includes the victim's next of kin. The statute further relates that when there is bodily injury to a victim, "the victim" may be reimbursed for "income lost by the victim as a result of the offense." The State argues that because Article I, section 16(b) of the Florida Constitution gives the next of kin of victims of crime the right to be present at all crucial stages of criminal proceedings, there is an inference that the lost wages of the next of kin in attending the trial is an economic loss directly attributable to the crime, and that restitution for this loss is proper. That argument, however, makes an illogical leap.
Having a right to attend a trial does not necessarily imply a right to be reimbursed by a criminal defendant for one's voluntary attendance. Moreover, for restitution to be deemed reasonable, it must bear a significant relationship to the offense of which the defendant was convicted. See L.H., 803 So.2d at 863. As we have noted, a factor in determining whether a significant relationship exists is whether there is a causal connection between the criminal conduct and the loss claimed by the victim. Id. Thus, before ordering restitution, the trial court must find that the loss or damage is both causally connected to the offense, and bears a significant relationship to the offense. See Bernard, 859 So.2d at 562. We have held in the past that in certain circumstances lost wages may provide a basis for a restitution *826 award. See Graham, 720 So.2d at 294; see also Hollingsworth. In the present case, however, we do not discern the "significant relationship" between the underlying criminal offense, and the attendance at trial of what is unquestionably a very interested spectator, in the absence of a statute authorizing such an award.
Two cases involving restitution in the juvenile justice context are instructive in this regard. In J.S. v. State, 717 So.2d 175 (Fla. 4th DCA 1998), the Fourth District Court of Appeal held that wages lost by the direct victims of an offense as a result of their attendance at court proceedings did not bear a significant relationship to the underlying criminal offense. The victims in J.S., testified that they had to take three days off, one for a deposition, one for trial, and one for the restitution hearing. The trial court awarded $480.00 for lost wages. The juvenile challenged this award, arguing that Chapter 39 does not authorize the award of lost wages because of a victim's compliance with the demands of the criminal justice system. The court examined section 39.054(1)(f), Florida Statutes (1995), which authorizes restitution against juvenile offenders, and noted that:
Generally, costs resulting from participation in court proceedings are not recoverable, absent a specific statute authorizing them.
Id., at 177. The court recognized that section 775.089(2)(b) permits restitution for income lost by the victim as a result of the offense, but determined that the restitution statute also requires the application of the significant relationship test.[1]See also J.B. v. State, 646 So.2d 808 (Fla. 1st DCA 1994) (taking into account the juvenile statute does not specifically reference lost wages, the award of restitution for lost wages was not authorized by law because these lost wages were not causally related to the commission of the crime, but resulted from the witnesses' attendance at the hearing).
Accordingly, we conclude that in the absence of a statute specifically authorizing such an award, the trial court erred in awarding as part of restitution the lost wages of the parents of the decedent for the time spent by them in attending the trial. We turn now to a consideration of the award of restitution for lost future earnings of the decedent.

V. Lost wages of the murder victim.
If the decedent had survived, there is no question but that he would have been entitled to a restitution award of his lost wages. See Graham. Section 775.089(2)(b), Florida Statutes, specifically authorizes the recovery of lost income for victims who have suffered a bodily injury as a result of a defendant's offense. It would be inconsistent to award lost income to a victim who suffers a bodily injury that renders him or her unable to work in the future, but not to award restitution to the estate of an identical victim whose bodily injury causes his or her death.
We come to this conclusion not only because of the inconsistency implicit in a contrary conclusion, but also because the authorization of restitution for lost income to an estate of the victim furthers the purposes of the restitution statute. The intention of the restitution statute is not only to compensate the victim, but also to serve the rehabilitative, deterrent, and retributive goals of the criminal justice system. See Kirby v. State, 863 So.2d 238, 242 (Fla.2003). Unlike civil damages, restitution *827 is a criminal sanction. Id. Civil damages and criminal restitution are distinct remedies, both of which are available to the victim regardless of whether an enforceable civil obligation exists prior to sentencing. See Id. at 244. The mere fact that a lost wage claim may also be compensable civilly is not a bar to awarding such losses as part of restitution, provided the prerequisites are met. See State v. Williams, 805 So.2d 1082 (Fla. 5th DCA 2002). As noted earlier, restitution requires findings by the trial court that the loss or damage is causally connected to the offense, either directly or indirectly, and bears a significant relationship to the offense. See Bernard.
Here, there was substantial competent evidence to support a claim for lost future earnings, and there is additionally a connection that is at the very least indirect between the commission of the crime, and the loss incurred. Moreover, the estate of a murder victim is specifically recognized by the statute as a "victim" that is eligible to receive restitution. Thus, the statute appears to support such an award.
While we have found no cases in Florida in which this issue is directly addressed, there is some authority from outside of Florida for such an award. See State v. Mayberry, 415 N.W.2d 644 (Iowa 1987) (restitution permitted to parents of a murder victim for the present value of the projected estate of the victim); State v. Moriarty, 87 Or.App. 465, 742 P.2d 704 (1987), review denied, 304 Or. 547, 747 P.2d 998 (1987) (held that restitution in the amount of the homicide victim's projected income is a valid award). See also Kyser v. State, 513 So.2d 68 (Ala.Crim.App.1987); cf., People v. Stovall, 75 P.3d 1165 (Colo.App.2003). Under the circumstances, therefore, we conclude that an award of the decedent's future lost income to his or her estate is appropriate.
We are concerned, however, with the methodology used by the trial court in arriving at the award. The trial court attempted to use the present value of the future earnings of the decedent in arriving at its restitution number. That figure is calculated, generally speaking, by determining the probable future gross earnings of the decedent during his or her life expectancy, and deducting from that number the probable living expenses of the decedent to be incurred during the same period. The figure obtained is then discounted to present value. See Wilcox v. Leverock, 548 So.2d 1116, 1117-18 (Fla.1989). See also § 768.18, Fla. Stat. (2003). A review of the record suggests to us that the trial judge failed to deduct the living expenses, including income taxes, of the decedent in arriving at his lost future wages. If so, then the restitution arrived at by the trial court is too high.
Accordingly, we reverse the award and remand this case to the trial court for a reconsideration and recalculation of the lost future wages of the decedent in light of this opinion. As to all other parts of the restitution order other than those addressed in this opinion, we affirm.

VI. Certified questions.
We recognize that the issues presented to us are of great public importance, and therefore certify to the Florida Supreme Court, the following two questions:
DOES SECTION 775.089, FLORIDA STATUTES (2003), AUTHORIZE A RESTITUTION AWARD FOR THE LOST WAGES OF A NEXT OF KIN VOLUNTARILY ATTENDING THE MURDER TRIAL OF THE PERSON ACCUSED OF KILLING THE VICTIM?
DOES SECTION 775.089, FLORIDA STATUTES (2003), AUTHORIZE A *828 RESTITUTION AWARD FOR THE ESTATE OF A MURDER VICTIM OF AN AMOUNT CONSISTING OF THE LOST FUTURE INCOME OF THE VICTIM?
AFFIRMED in part, REVERSED in part and REMANDED with instructions.
SAWAYA, C.J., and PETERSON, J., concur.
NOTES
[1] The J.S. court allowed the award of lost wages to stand, however, because the defendant failed to preserve his objection to that portion of the restitution award for appellate review.