935 So.2d 1226 (2006)
Timothy Thomas KOILE, Petitioner,
v.
STATE of Florida, Respondent.
No. SC05132.
Supreme Court of Florida.
July 6, 2006.
*1228 James S. Purdy, Public Defender and Thomas J. Lukashow and Marvin F. Clegg, Assistant Public Defenders, Seventh Judicial Circuit, Daytona Beach, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, Kristen L. Davenport, Belle B. Schumann and Kellie A. Nielan, Assistant Attorneys General, Daytona Beach, FL, for Respondent.
WELLS, J.
We have for review a decision of the Fifth District Court of Appeal on the following questions, which the court certified to be of great public importance:
DOES SECTION 775.089, FLORIDA STATUTES (2003), AUTHORIZE A RESTITUTION AWARD FOR THE LOST WAGES OF A NEXT OF KIN VOLUNTARILY ATTENDING THE MURDER TRIAL OF THE PERSON ACCUSED OF KILLING THE VICTIM?
DOES SECTION 775.089, FLORIDA STATUTES (2003), AUTHORIZE A RESTITUTION AWARD FOR THE ESTATE OF A MURDER VICTIM OF AN AMOUNT CONSISTING OF THE LOST FUTURE INCOME OF THE VICTIM?
Koile v. State, 902 So.2d 822, 827-28 (Fla. 5th DCA 2005). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons expressed below, we answer the first certified question in the negative and the second question in the affirmative.

FACTS
Timothy Koile and Catherine Stanek Cousins were indicted for the first-degree murder of Sean Patrick Cousins. During the trial, Koile entered a plea of no contest to second-degree murder pursuant to a plea bargain in which he agreed to a specific incarcerative sentence and further agreed to pay restitution in an unstipulated amount. Subsequently, the trial court held a hearing regarding the proper amount of restitution. At the hearing, the following evidence was presented:
[T]he victim's father, Patrick Cousins, testified that he had incurred a number of expenses, many of which are not contested, that resulted from his son's murder. Among the uncontested expenses, for example, were funeral and burial costs. He also testified, however, that he elected to attend the three-week trial of Mr. Koile, and that as a result, he lost income of about $12,000. He admitted that he only testified at the trial on a single day. The victim's mother, Roseanne Cousins, indicated that she lost $1,500 in wages during the three-week trial period, and likewise related that she only testified on a single day of the trial. She testified, as well, that a wrongful death suit had been brought, and was still pending against Mr. Koile and his co-defendant, who was the wife of the murder victim.
In addition, the State also presented evidence on behalf of the victim's estate concerning the loss of future income of the victim. It appears that the victim had been a first officer with Air Jamaica, and was compensated with a salary of $87,988 per year. He was expected to be promoted to captain in the future, at which time he would earn $156,882 per year. There was also testimony presented concerning the airline's mandatory retirement plan and pension contributions. To prove up the lost future earnings of the victim, the State called a certified public accountant, who testified *1229 that the victim's future income was $3,322,743, assuming his promotion to captain, and assuming that he worked until age 60.
Koile, 902 So.2d at 823-24. After considering the testimony and evidence presented during the hearing, the trial court rendered a written order assessing restitution against Koile and his codefendant, jointly and severally. The court awarded the victim's parents the lost wages that they claimed so that they could attend the trial, along with other expenses they incurred, and further awarded the victim's estate $2,042,126 in damages, an amount which represented the present value of the victim's lost earnings without assuming that he would have been promoted to captain. Koile filed a timely appeal to the Fifth District, challenging the restitution order.
On appeal, the Fifth District addressed whether it was appropriate to assess the following two items as restitution: (1) the lost wages of the victim's parents for the income they lost while attending the trial; and (2) the lost future earnings of the decedent. The court noted that in order for restitution to be considered reasonable, it must bear a significant relationship to the offense for which the defendant was convicted and there must be a causal connection between the criminal conduct and the loss claimed by the victim. Id. at 825. The court first concluded that in the absence of a statute which specifically authorizes such an award, the trial court should not have awarded lost wages for the next of kin who voluntarily attends the trial because there is not a "significant relationship between the underlying criminal offense, and the attendance at trial of what is unquestionably a very interested spectator." Id. at 826 (internal quotation marks omitted). In reaching this decision, the court relied on J.S. v. State, 717 So.2d 175 (Fla. 4th DCA 1998), a decision in which the Fourth District held that a court could not award wages lost by the direct victims of an offense as a result of their attendance at court proceedings because the attendance did not bear a significant relationship to the underlying criminal offense. Koile, 902 So.2d at 826. In turning to the second issue, however, the Fifth District reached a different conclusion, determining that section 775.089, Florida Statutes (2003), authorized the estate of a murder victim to receive as restitution the future lost income of the murder victim. The court did not agree with the trial court's determination with regard to the proper amount of restitution, reversing the award in part because the trial court failed to deduct living expenses and income taxes from the award. Id. at 827. The Fifth District then certified the above two questions. Id. at 827-28.

ANALYSIS
Generally, appellate courts apply an abuse of discretion standard when reviewing a trial court's determination as to the proper amount of restitution. See Spivey v. State, 531 So.2d 965, 967 (Fla.1988); A.B. v. State, 910 So.2d 415, 417 (Fla. 4th DCA 2005). While this case involves an award of restitution, the only issue presented by the parties is a question of law: whether the relevant statute permits the type of restitution awarded. Accordingly, this question is subject to the de novo standard of review. See Daniels v. Fla. Dep't of Health, 898 So.2d 61, 64 (Fla. 2005); D'Angelo v. Fitzmaurice, 863 So.2d 311, 314 (Fla.2003).
Koile first alleges that the district court erred in permitting an award for the victim's lost wages, alleging that section *1230 775.089, Florida Statutes (2003), does not provide for this type of award.[1] Section 775.089 states in pertinent part:
(1)(a) In addition to any punishment, the court shall order the defendant to make restitution to the victim for:
1. Damage or loss caused directly or indirectly by the defendant's offense; and
2. Damage or loss related to the defendant's criminal episode,
unless it finds clear and compelling reasons not to order such restitution. Restitution may be monetary or nonmonetary restitution. The court shall make the payment of restitution a condition of probation in accordance with s. 948.03....
....
(c) The term "victim" as used in this section and in any provision of law relating to restitution means each person who suffers property damage or loss, monetary expense, or physical injury or death as a direct or indirect result of the defendant's offense or criminal episode, and also includes the victim's estate if the victim is deceased, and the victim's next of kin if the victim is deceased as a result of the offense.

(2)(a) When an offense has resulted in bodily injury to a victim, a restitution order entered under subsection (1) shall require that the defendant:
1. Pay the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a recognized method of healing.
2. Pay the cost of necessary physical and occupational therapy and rehabilitation.
3. Reimburse the victim for income lost by the victim as a result of the offense.

4. In the case of an offense which resulted in bodily injury that also resulted in the death of a victim, pay an amount equal to the cost of necessary funeral and related services.
§ 775.089, Fla. Stat. (2003) (emphasis added).
Before resorting to the rules of statutory interpretation, courts must first look to the actual language of the statute itself. Joshua v. City of Gainesville, 768 So.2d 432, 435 (Fla.2000); accord Bell-South Telecomms., Inc. v. Meeks, 863 So.2d 287, 289 (Fla.2003). As this Court has often repeated:
When the statute is clear and unambiguous, courts will not look behind the statute's *1231 plain language for legislative intent or resort to rules of statutory construction to ascertain intent. See Lee County Elec. Coop., Inc. v. Jacobs, 820 So.2d 297, 303 (Fla.2002). In such instance, the statute's plain and ordinary meaning must control, unless this leads to an unreasonable result or a result clearly contrary to legislative intent. See State v. Burris, 875 So.2d 408, 410 (Fla.2004). When the statutory language is clear, "courts have no occasion to resort to rules of constructionthey must read the statute as written, for to do otherwise would constitute an abrogation of legislative power." Nicoll v. Baker, 668 So.2d 989, 990-91 (Fla.1996).
Daniels, 898 So.2d at 64-65. However, if the statutory intent is unclear from the plain language of the statute, then "we apply rules of statutory construction and explore legislative history to determine legislative intent." BellSouth Telecomms., Inc., 863 So.2d at 289. Keeping these principles in mind, we turn to the petitioner's arguments.
Koile first asserts that the only expenses specifically identified under section 775.089 as a legitimate restitution item for a deceased victim are funeral expenses and that the statute does not expressly state that projected lost future income can be awarded to the estate or the decedent's next of kin.[2] According to the plain language of the statute, the term "victim" includes not only the person injured by the defendant but also the person's estate if he or she is deceased as well as the person's next of kin if he or she is deceased as a result of the offense. See § 775.089(1)(c), Fla. Stat. (2003) (defining the term "victim"). By expanding the definition of "victim" to include the victim's estate and next of kin, the Legislature clearly contemplated an award to the estate or next of kin beyond just covering the victim's funeral expenses. Otherwise, there would be no need to expand the definition of victim. As this Court has held, provisions in a statute are not to be construed as superfluous if a reasonable construction exists that gives effect to all words and provisions. See, e.g., State v. Goode, 830 So.2d 817, 824 (Fla.2002) ("[A] basic rule of statutory construction provides that the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless.").
Accordingly, reading section 775.089(2)(a)(3) by using the full definition of "victim" if a crime results in bodily injury, a court must "reimburse the victim [including his estate and next of kin] for income lost by the victim [including his estate and next of kin] as a result of the offense." Subsection (2)(a)(4) continues that if the bodily injury resulted in the victim's death, the defendant shall also pay the cost of the necessary funeral and related services. A defendant does not pick which provision he prefers; he is liable for all of the costs that are applicable. To read the statute in the manner proposed by Koile would ignore section 775.089(1)(c), which expands the definition of the term "victim."
Koile also contends that subsection 775.089(2)(a)(3) should be read as stating that the court can award lost income only if the income was lost prior to the restitution hearing. According to Koile, since the *1232 statute specifically states that the court must "reimburse the victim for income lost by the victim as a result of the offense," the term "reimburse" applies only to expenses that were already encountered and does not include any future expenses. We disagree. First, the statute does not provide any such limitation on the timing of lost income in relation to the restitution hearing. Moreover, the term "reimburse" does not have such a narrow and exclusive definition. Instead, "reimburse" means "To pay back, to make restoration, to repay that expended; to indemnify, or make whole." Black's Law Dictionary 1287 (6th ed. 1990) (emphasis added).[3] This definition is not as restrictive as Koile suggests but instead includes both paying a person back for expenses already incurred and restoring a person back to the position he or she formerly occupied so that the person is made whole. Based on the above analysis, we find that the plain language of section 775.089 clearly authorizes an award of lost income, including lost income which will occur based on the decedent's death.
The clear language of the statute is bolstered by the Legislature's explicit statements of intent in respect to the statute. In numerous years, the Legislature has passed and amended the restitution statute, and each time the Legislature has stated that its intent is to ensure that victims of crime are properly compensated and respected by the criminal justice system. For example, in 1984 when the Legislature amended section 775.089 to include the provisions at issue, the Legislature made explicit findings that "[e]ven though there is growing recognition that the criminal justice system would cease to function without the cooperation of victims and witnesses, the historic unresponsiveness of the criminal justice system to the real needs of victims and witnesses has not yet been fully corrected." Ch. 84-363, § 2, at 2144, Laws of Fla. Moreover, in the same legislative findings, the Legislature also noted that "[w]hile state law provides the option of financial restitution to victims by defendants, most victims are never fully or even partially compensated by defendants for their injuries and other losses." Id.[4] Accordingly, the Legislature required courts to order the defendant to make restitution to the victims unless clear and compelling reasons existed to justify the nonpayment of restitution. Moreover, in the same revisions, the Legislature expanded the definition of victim to include "the aggrieved party, the aggrieved party's estate if the aggrieved party is deceased, and the aggrieved party's next of kin if the aggrieved party is deceased as a result of the offense." Id. § 5 at 2146.[5] In 1992, the Legislature amended section 775.089 slightly, and in the bill amending the statute specifically noted that it had previously determined that "the state has *1233 a moral responsibility to provide aid, care, and support to victims of crime." Ch. 92-107 at 901, Laws of Fla. (preamble).
The main purpose of section 775.089 has been to uphold the rights of crime victims by guaranteeing that they are compensated for their losses. Anything less than full compensation for those items discussed in section 775.089 would defeat the legislative intent of the statute. Moreover, this result is likewise supported by the statutory tenet that "courts should avoid readings that would render part of a statute meaningless." Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 456 (Fla.1992)). A statute "must be construed in its entirety and as a whole." St. Mary's Hosp., Inc. v. Phillipe, 769 So.2d 961, 967 (Fla.2000). As addressed above, Koile's interpretation of the statute would render the section expanding the definition of "victim" meaningless.
The next issue this Court must consider is whether section 775.089 authorizes a restitution award for the lost wages of a next of kin who voluntarily attends the murder trial of the person accused of killing the decedent. As addressed above, the district court struck this awarda decision the State challenges, contending that based on the language of the statute and a victim's constitutional right to attend the trial, the court should have permitted the award of lost wages for attending a trial.
First, as addressed above, the issue before this Court is whether the statute authorizes this award.[6] Consequently, this Court must first look to the plain language of the statute, and if the statute is ambiguous on its face, the Court can only then rely upon the rules of statutory construction in order to discern legislative intent. Again, we examine the same statutory provisions as above, which provide in relevant part:
[(1)](c) The term "victim" as used in this section and in any provision of law relating to restitution means each person who suffers property damage or loss, monetary expense, or physical injury or death as a direct or indirect result of the defendant's offense or criminal episode, and also includes the victim's estate if the victim is deceased, and the victim's next of kin if the victim is deceased as a result of the offense.

....
(2)(a) When an offense has resulted in bodily injury to a victim, a restitution order entered under subsection (1) shall require that the defendant:
1. Pay the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a recognized method of healing.
....
3. Reimburse the victim for income lost by the victim as a result of the offense.

§ 775.089, Fla. Stat. (2003) (emphasis added). Reading section 775.089(2)(a)3 by using the full definition of "victim" requires that in cases where bodily harm occurred, the court must "reimburse the victim [including his estate and next of kin] for income lost by the victim [including his *1234 estate and next of kin] as a result of the offense." § 775.089(2)(a)(3), Fla. Stat. (2003) (emphasis added). Based on this language, the statute itself requires that the loss must be causally connected to the offense. When reviewing a challenge to a restitution award under section 775.089, Florida courts have required a finding that "the loss or damage is causally connected to the offense and bears a significant relationship to the offense." Schuette v. State, 822 So.2d 1275, 1280 (Fla.2002) (emphasis added) (quoting Glaubius v. State, 688 So.2d 913, 915 (Fla.1997)). Accordingly, courts have struck numerous awards finding that both of these prongs were not met. See, e.g., Schuette; State v. Williams, 520 So.2d 276 (Fla.1988); Ochoa v. State, 596 So.2d 515 (Fla. 2d DCA 1992); Stewart v. State, 571 So.2d 485 (Fla. 2d DCA 1990). For example, in L.H. v. State, 803 So.2d 862 (Fla. 4th DCA 2002), the defendant was convicted of shooting a deadly missile and criminal mischief, which damaged the victim's car. The trial court initially awarded the victim $14.15 to cover car repair costs, $1,834.40 in lost wages incurred after the victim was fired for being late to work after the new source of transportation was unreliable, and $200 in travel costs for the victim to find a new job. The district court struck the award for travel costs and lost wages, finding that these losses were not significantly related to the offense. In J.S. v. State, 717 So.2d 175 (Fla. 4th DCA 1998), the court held that wages lost as result of the victim's attendance at court proceedings did not bear a significant relationship to the underlying offense.
In this case, the decedent's parents made a voluntary decision to attend the trial. Thus, the lost income was not a result of the offense but was a result of a voluntary decision and does not bear a significant relationship to the offense. We agree that this lost income is not recoverable under the statute.

CONCLUSION
Based on the above analysis, we answer the certified questions by holding that section 775.089 authorizes a restitution award for the estate of a murder victim of an amount consisting of the lost future income of the victim, and section 775.089 does not authorize restitution for the lost wages of a next of kin who voluntarily attends the murder trial of the person accused of killing the victim. We approve the result reached by the Fifth District and remand for further proceedings consistent with this opinion.
It is so ordered.
LEWIS, C.J., and CANTERO and BELL, JJ., concur.
BELL, J., specially concurs with an opinion, in which CANTERO, J., concurs.
PARIENTE, J., dissents with an opinion, in which ANSTEAD and QUINCE, JJ., concur.
BELL, J., specially concurring.
As the majority opinion explains in footnote 1, (1) this case is one of pure statutory interpretation; no constitutional claims have been raised; and, (2) the "unanswered questions" raised by Koile are clearly beyond the scope of the certified questions. Majority op. at 1230 n. 1. In light of this explanation, I join in the majority opinion; but I do so with grave reservations. There is an enormous potential for injustice if damages such as lost future income are imposed as restitution in the typical criminal sentencing process. *1235 Therefore, I strongly urge the Legislature to consider the intended scope of damages to be awarded as restitution.
If the criminal justice system is tasked with the duty of determining damages like lost future income, there are a myriad of "unanswered questions" about its ability to do so fairly under the procedures currently employed. I will state just a few of these "unanswered questions." In the typical civil case, a jury is the trier of fact on the issue of damages. The civil jury has the benefit of hearing competing witnesses, especially experts, that assist it in assessing a plaintiff's claim for damages, particularly the more difficult question of future damages like lost future income. How is the criminal justice system to replicate this adversarial testing in a criminal case? Must a jury now be empaneled? Will the state provide expert witnesses to criminal defendants so that there is an adequate testing of the victim's claim for such damages? Will these experts and other witnesses be subjected to the crucible of cross-examination that they face in civil cases? What about pretrial discovery? Extensive discovery is taken in civil cases to explore claims for damage. This is not true of the typical criminal case. The focus of discovery in criminal cases is the crime itself, not the measure of all economic damages that may flow from the crime. So, if the criminal court is to fairly assess damages such as lost future income, what similar discovery process must be available in criminal cases? Additionally, if the victim is deceased, how does the criminal court replicate the assurance in civil cases that a personal representative and an estate attorney are in place to properly represent the estate and protect the conflicting interests of beneficiaries and creditors? Last, but certainly not least, how will the criminal justice system assure that criminal defendants are adequately represented by attorneys trained in the nuances of tort law?
These questions about the impact of the law from this particular case should not be taken to imply that the harm caused by crime should not be fully recompensed. Those who harm others must be held responsible to repair that harm. Indeed, the fair assessment and reparation of such harm is a fundamental purpose of our entire system of justice; but one cannot ignore the reality that the two main arms of our justice system, the civil and the criminal systems, are separate and distinct for good reasons. And, one cannot lose sight of this distinctiveness in the pursuit of the laudable goal of assuring that victims of crimes are made whole. The civil and criminal systems confront, process, and resolve differing forms and degrees of harm in fundamentally different ways. Although each arm may assist the other in achieving due reparation of harm, there is an inherent limitation on the ability of either arm to properly perform the duties the other is uniquely designed to handle.
This differentiation between the civil and criminal arms of our justice system is the core of my concern about the impact of the law from this case. I am gravely concerned that the criminal system will be either compelled or, even more problematic, emboldened to do what it cannot do competently or fairly. The criminal system is certainly capable of fairly assessing and imposing restitution for the typical economic harm caused by most crimes. However, it is not equipped to do so fairly for every form of economic damage suffered by crime victims, much less their relatives and heirs, particularly damages like lost future income.
Therefore, although the majority's reading of the statutory language is proper, I *1236 seriously question that the result is one contemplated, much less intended, by the Legislature. In light of all this, I repeat my urging that the Legislature address this important question. And, until and unless a change is made in the statute, if the criminal justice system must shoulder the burden of determining damages such as lost future income, to do so fairly it will have to reassess the way it processes restitution issues. Indeed, its traditional and typically summary processes in restitution hearings may have to be dramatically redesigned.
CANTERO, J., concurs.
PARIENTE, J., concurring in part and dissenting in part.
The aim of the majority's construction of the restitution statute is laudable. However, the statute's expedited (compared to the civil justice system) method of making the victim whole falls short of authorizing a victim's estate or next of kin to receive the victim's lost future income.
The statutory requirement that a defendant "reimburse the victim for income lost by the victim as a result of the offense" does not, in my view, encompass this form of restitution. First, contrary to the majority's view, the usual understanding of the term "reimburse" looks backward to losses already incurred, not forward to anticipated losses.[7] This is consistent with the way section 775.089 has always been applied in our courts. See, e.g., Glaubius v. State, 688 So.2d 913, 916 (Fla.1997) (approving award of restitution for victim's investigative costs); Hollingsworth v. State, 835 So.2d 373, 374 (Fla. 1st DCA 2003) (approving restitution for wages lost by mother of victim during time she was too upset by crime to go to work).
Even if the term "reimburse" is construed to authorize restitution to a surviving victim for lost future income, the statutory language does not clearly authorize restitution for lost income to the next of kin of a deceased victim. Under some circumstances, restitution for lost future income would prove a windfall to the victim's "next of kin," who would not recover this element of damages under Florida's Wrongful Death Act. Section 775.089(1)(c) specifies that "[t]he term `victim' ... includes the victim's estate if the victim is deceased, and the victim's next of kin if the victim is deceased as a result of the offense." The Wrongful Death Act authorizes damages for lost net accumulations, the product of future income, only to the decedent's surviving spouse or lineal descendants, or to the surviving parent of an adult child. § 768.21(6), Fla. Stat. (2005). If the victim in this case had not been survived by a spouse or children, his parents would have been eligible to recover net accumulations under section 768.21(6)(b) as well as restitution for lost income as "next of kin" under the majority's construction of section 775.089. However, had the victim also had no surviving parents, the majority's view would direct restitution for lost future income to other estate beneficiaries such as siblings, who are ineligible to recover net accumulations under the Wrongful Death Act. I doubt that the Legislature intended this result.
Instead, the Legislature's intent should be determined from the two subsections of *1237 section 775.089 that concern deceased victims: Subsection (1)(c) defines victim to include "the victim's estate if the victim is deceased, and the victim's next of kin if the victim is deceased as a result of the offense." Subsection (2)(a)(4) authorizes restitution for funeral expenses "[i]n the case of an offense which resulted in bodily injury that also resulted in the death of a victim." Often, funeral expenses are initially paid by a deceased's next of kina spouse, adult child, parent, or sibling. Under Florida law, reimbursement for funeral expenses comes later from the victim's estate, whose beneficiaries may not have paid the funeral expenses. See § 733.707(1)(b), Fla. Stat. (2005) (setting forth order of payment of estate's obligations and including funeral expenses up to $6,000 "whether paid by a guardian, the personal representative, or any other person"); § 738.201(2)(c), Fla. Stat. (2005) (including funeral expenses among estate fiduciary's obligation to pay from estate's principal "all other disbursements made or incurred in connection with the settlement of a decedent's estate"); see also Sinclair Refining Co. v. Butler, 190 So.2d 313, 319 (Fla.1965) (stating that in a survival action, "the right to recover reasonable funeral expenses vests in the personal representative of a decedent who has been killed by the tortious act of another; and where such funeral expenses have been paid by a surviving spouse or parent or other person, that person would of course be entitled to reimbursement from the personal representative"). It is reasonable to conclude that the Legislature recognized that a deceased's next of kin rather than estate beneficiaries often cover funeral expenses in defining "victim" to include "next of kin" in the case of a death caused by the defendant's crime. I discern no other reason for the distinction between the victim's estate and next of kin in section 775.089(1)(c).
This separate treatment of estate and next of kin in the case of a deceased victim distinguishes section 775.089 from the federal restitution statute, 18 U.S.C. § 3663 (2000), which one court has construed as authorizing restitution for lost future income in homicide cases. See United States v. Visinaiz, 344 F.Supp.2d 1310, 1313 (D.Utah 2004), aff'd, 428 F.3d 1300 (10th Cir.2005), cert. denied, ___ U.S. ___, 126 S.Ct. 1101, 163 L.Ed.2d 913 (2006); United States v. Bedonie, 317 F.Supp.2d 1285, 1305-1306 (D.Utah 2004), rev'd on other grounds sub nom. United States v. Serawop, 410 F.3d 656 (10th Cir.2005). The federal statute allows a victim's family member, among others, to assume the rights of a minor, incompetent, incapacitated, or deceased victim, and then authorizes reimbursement for funeral expenses to whoever has assumed the victim's rights. Florida, in contrast, specifically defines "victim" to include next of kin "if the victim is deceased as a result of the offense," § 775.089(1)(c), making next of kin the sole available recipient of the restitution required by subsection (2)(a)(4) for funeral expenses "[i]n the case of an offense which resulted in bodily injury that also resulted in the death of a victim." This is a distinction that reflects a legislatively intended difference.
From these observations I conclude that the Legislature intended that a defendant make restitution to the victim's next of kin for funeral expenses of a victim who dies from physical injuries resulting from or related to the defendant's criminal conduct, but not for the victim's lost future income. Thus, the victim's family can seek lost future income in a civil action, but not in a criminal proceeding pursuant to section *1238 775.089. Accordingly, I respectfully dissent.
Finally, in light of the majority's decision, I agree with Justice Bell that the Legislature should reexamine whether the restitution statute is the proper means of making lost future income awards in homicide cases. Today's holding has great potential to overstress criminal courts, whose primary focus is the fair and timely resolution of pending criminal cases. The federal statute reflects Congress's recognition that elaborate restitution claims could bog down the criminal sentencing process:
To the extent that the court determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution to any victims, the court may decline to make such an order.
18 U.S.C. § 3663(a)(1)(B)(ii) (2000). Section 775.089(6)(a) requires trial courts to consider only the victim's loss in deciding whether to award restitution and determine its amount, but gives the trial courts no discretion to consider the effect on the sentencing process. Overall, and particularly in the absence of this authority, the Wrongful Death Act is the fairer, more appropriate mechanism for resolving an estate's claims of lost future income and net accumulations.
ANSTEAD and QUINCE, JJ., concur.
NOTES
[1] Koile's only point before this Court is that the statute itself does not specifically permit this type of restitution. In support of this assertion, Koile suggests that if courts apply the restitution statute to future lost income, there are too many unanswered questions under the statute and that if the Legislature had really intended this type of award, it would have provided more guidance. It is important to note, however, that Koile is not raising any constitutional challenges to section 775.089. Moreover, his point as to various "unanswered questions" is beyond the scope of the certified questions. We decline to address those claims that are beyond the scope of the certified questions and instead limit our opinion to the certified questions asked by the Fifth District: the types of restitution that are authorized by section 775.089. See Battle v. State, 911 So.2d 85, 87 n. 1 (Fla.2005) (declining to address claims that are beyond scope of Court's jurisdictional basis), cert. denied, ___ U.S. ___, 126 S.Ct. 1069, 163 L.Ed.2d 890 (2006).
[2] However, he does suggest that the statute may permit the court to award third parties their medical and therapy costs since the provisions covering such expenses simply read that a defendant must pay these costs and does not designate to whom.
[3] Further clarification can be attained by reviewing the definition of "indemnify," which provides: "To restore the victim of a loss in whole or in part, by payment, repair, or replacement. To save harmless; to secure against loss or damage; to give security for the reimbursement of a person in case of an anticipated loss falling upon him." Black's Law Dictionary 769 (6th ed. 1990).
[4] This expressed legislative intent is contrary to Koile's suggestion that the Legislature intended victims to use other civil remedies, like those found in the Wrongful Death Statute, to compensate them for the majority of their losses, like future lost income.
[5] It is important to keep the expanded definition of "victims" in mind while reviewing the legislative intent because the expressed intent behind the amendment was to protect the "victims" and ensure the state "do all that is possible" to assist the "victims." Id. § 2.
[6] Because our review consists entirely of a matter of statutory construction, the Court declines the State's suggestion to review the laws of other states which have permitted such awards.
[7] Black's Law Dictionary (8th ed. 1999) defines reimbursement as repayment or indemnification. Id. at 1312. Merriam-Webster's Collegiate Dictionary (10th ed. 1999) defines reimburse primarily as "to pay back to someone" and secondarily as "to make restoration or payment of an equivalent to." Id. at 986.