964 So.2d 857 (2007)
Titus L. BELLOT, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-3980.
District Court of Appeal of Florida, Second District.
September 19, 2007.
James Marion Moorman, Public Defender, and Judith Ellis, Assistant Public Defender, Bartow, for Appellant.
*858 Bill McCollum, Attorney General, Tallahassee, and Tonja Rene Vickers, Assistant Attorney General, Tampa, for Appellee.
FULMER, Judge.
Titus Bellot pleaded no contest to one count each of armed trespass, resisting or obstructing an officer without violence, and attempted robbery by sudden snatching. He appeals from a restitution order requiring him to pay a total of $22,679.85 to four healthcare providers involved in the treatment of the victim of the offenses charged in the first and third counts. We affirm as to one item of restitution but reverse as to the other items because the State failed to adduce sufficient evidence to support the remainder of the restitution award.
At the restitution hearing, the only testimony relevant to this appeal was given by the victim, Luis Garcia-Casillas ("Mr. Garcia"), who testified that Bellot entered his house and attempted to snatch a bracelet off his wrist. A fight ensued, with Mr. Garcia eventually gaining the upper hand and holding Bellot in place. The police arrived after the fight had gone on for fifteen or twenty minutes. The police called an ambulance because Mr. Garcia "felt very agitated and [his] heart felt like it was going to pop out and [his] chest hurt." Mr. Garcia canceled the ambulance, but the police prevailed upon him to seek treatment because he continued to appear unwell, so a second ambulance was called. He was taken to a hospital and remained there as a patient for three days.
Mr. Garcia testified that he had not had heart or vein problems prior to the incident, just high blood pressure. A number of tests were run at the hospital, at least some of them on the day he arrived, according to Mr. Garcia. On direct examination, Mr. Garcia testified that they "opened me up here and . . . unclogged the vein." On cross-examination he expanded upon this matter by testifying that "they said I had a vein that was destroyed." Defense counsel continued:
Q. Do you know how that happened?
A. With the struggle I had with the boy.
Q. Did the doctor tell you that?
A. What?
Q. Did the doctor tell you that was how it happened?
A. No, I know that it was from that because I never had that.
The prosecutor questioned Mr. Garcia on bills and statements that healthcare providers had sent to him. Five documents were admitted into evidence:
1. An ambulance bill for transport on January 28, 2006, $536.00.
2. A bill from Family Health Centers of SW Florida for services (three line items) on January 29, 30, and 31, $390.00.
3. A bill from Florida Heart Associates for consultations and tests (eight line items) done on January 29 and 30, $1414.00.
4. An unitemized letter dated March 7, 2006, from Southwest Florida Regional Medical Center informing Mr. Garcia that his balance due for services on January 29-31 was $29,056.93.
5. An unitemized "Bill for Services" dated March 29, 2006, from Southwest Florida Regional Medical Center for $20,339.85.
Mr. Garcia testified that none of the bills were paid. Acknowledging that items 4 and 5 were for the same services, the State asked for restitution for items 1-3 and 5. Without making any findings, the court granted the State's request, resulting in a restitution award against Bellot totaling *859 $22,679.85; payment was made a condition of probation.
The issue on appeal is whether the evidence presented at the restitution hearing was sufficient to support the restitution award. We begin our analysis by noting that Florida law requires that
[i]n addition to any punishment, the court shall order the defendant to make restitution to the victim for:
1. Damage or loss caused directly or indirectly by the defendant's offense; and
2. Damage or loss related to the defendant's criminal episode,
unless it finds clear and compelling reasons not to order such restitution.
§ 775.089(1)(a), Fla. Stat. (2005). Additionally,
[w]hen an offense has resulted in bodily injury to a victim, a restitution order entered under subsection (1) shall require that the defendant:
1. Pay the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care. . . .
2. Pay the cost of necessary physical and occupational therapy and rehabilitation.
§ 775.089(2)(a).
"The burden of proving the amount of restitution is on the State, and the amount must be proved by a preponderance of the evidence." Koile v. State, 902 So.2d 822, 824 (Fla. 5th DCA 2005); see also § 775.089(7). As to causation, the Florida Supreme Court has held that
to order restitution under the statute, the court must find that the loss or damage [ (1) ] is causally connected to the offense and [ (2) ] bears a significant relationship to the offense. Further, under the statute, the State must establish these factors by a preponderance of the evidence.
Glaubius v. State, 688 So.2d 913, 915 (Fla. 1997) (citing § 775.089(7)). Analogizing to tort law, the court has equated the first element with "but-for" causation and the second, "significant relationship," element with proximate cause, including its requirement of reasonable foreseeability. Schuette v. State, 822 So.2d 1275, 1281-82 (Fla.2002) (citing Arling v. State, 559 So.2d 1274, 1275 (Fla. 2d DCA 1990)). The court in Schuette made it clear that, notwithstanding the relatively open-ended wording of section 775.089(1)(a)(2)"[d]amage or loss related to the defendant's criminal episode"added in 1993,[1] the specific two-element causation test recited in Glaubius still applies. Schuette, 822 So.2d at 1280-81.
We review restitution orders under an abuse of discretion standard. See Koile, 902 So.2d at 824. Restitution must be proved by substantial competent evidence. Id.
Our review of the testimony and documentary evidence leads us to conclude that the State adequately proved causation and restitution amount for only the ambulance charge, $536.00. Bellot committed a crime of violence against Mr. Garcia; as a direct result, Mr. Garcia became unwell and needed to be taken to the hospital. Other than this amount, however, the nature of the evidence makes it difficult to pinpoint the extent of Bellot's liability. The testimonial evidence underlying Bellot's liability for the ambulance charge would also support his liability for Mr. Garcia's initial visit to the hospital (presumably the emergency room), his initial consultation with physicians, and his initial *860 tests and treatment. However, which of the line items in Exhibits 2 and 3 correspond to these initial services is not clear, and Exhibit 5, the hospital bill, shows only a lump sum. In short, although the evidence presented by the State supports causation as to Bellot's liability for Mr. Garcia's initial medical care, the evidence does not clarify the corresponding amount of restitution.
Beyond these initial matters, we conclude that the State proved neither causation nor restitution amount. At best, the State showed "but for" causation: But for the fight instigated by Bellot, Mr. Garcia would not have seen doctors, had tests run, and had a three-day hospital stay. It may ultimately prove to be the case that the need for some or all of the post-initial tests and consultations and the three-day hospital stay were proximately caused by the altercation. For example, Mr. Garcia may have had a preexisting condition that was aggravated by the fightperhaps he was an "eggshell" victim such that the altercation really did cause a vein to be "destroyed." Cf., e.g., Hollie v. Radcliffe, 200 So.2d 616, 618 (Fla. 1st DCA 1967) (Florida rule is that when preexisting condition is aggravated by defendant's negligence, defendant may be held responsible for the entire condition). However, it is also possible that the initial consultation and testing that directly resulted from the altercation led the physicians to a preexisting condition that they believed needed to be addressed but that was not itself exacerbated by the fight.[2] It is likely that only expert testimony could distinguish between these possibilities. Additionally, the unitemized hospital statements (Exhibits 4 and 5), which are essentially dunning notices, do not disclose the extent to which the hospital charges relate to the initial treatment versus additional treatment for which Bellot may not be responsible.
Relatively few cases concerning the causal relationship between a crime and the victim's medical expenses have been reported. The State cites to A.J. v. State, 677 So.2d 935 (Fla. 4th DCA 1996), in support of its position that the order of restitution here was supported by the evidence. In A.J., the court concluded that the victim's mother's testimony regarding medical bills sufficiently established that the victim's injuries were connected to the aggravated battery committed by the defendant. Id. at 938. However, the court did not recite the testimony in detail but merely summarized it by saying that "[t]he mother identified a packet of medical bills as being complete copies of the bills relating to her son's injuries from the battery." Id. at 936. In a sense, Mr. Garcia testified analogously here. Again, however, the extent of the testing and hospital stay and Mr. Garcia's testimony about a "clogged" or "destroyed" vein raise questions about causation that need resolution and for which no competent, substantial evidence was presented at the hearing.
In conclusion, we affirm the award of restitution as to the ambulance charge of $536.00. We reverse the remainder of the $22,679.85 award and remand for another restitution hearing if the State elects to hold one. See, e.g., M.J.T. v. State, 927 So.2d 1077, 1078 (Fla. 2d DCA 2006). If the State does so and proves additional liability and restitution amount, the court shall make findings as to causation for each discrete item of restitution. See D.N. v. State, 529 So.2d 1217, 1224 (Fla. 1st *861 DCA 1988) (citing State v. Williams, 520 So.2d 276 (Fla.1988)), disapproved of on other grounds by State v. G.C., 572 So.2d 1380 (Fla.1991).
Reversed and remanded, with instructions.
CASANUEVA and WALLACE, JJ., Concur.
NOTES
[1] See ch. 93-37, § 1, Laws of Fla.
[2] Mr. Garcia's reasoning"I know that [the destroyed vein] was from [the fight] because I never had that"does not resolve the issue. Did the altercation really cause a vein to be "clogged" or "destroyed"? Or did the altercation fortuitously enable a serious condition to be uncovered?