979 So.2d 412 (2008)
STATE of Florida, Appellant,
v.
Wyon Dale CHILDERS, Appellee.
No. 1D07-0230.
District Court of Appeal of Florida, First District.
April 23, 2008.
*413 Bill McCollum, Attorney General, and Trisha Meggs Pate, Assistant Attorney General, Tallahassee; John F. Simon, Jr., Assistant State Attorney, Pensacola, for Appellant.
Richard G. Lubin and Tama Beth Kudman, West Palm Beach, for Appellee.
WEBSTER, J.
The state seeks review of an order denying restitution for losses it claims were "directly caused" as the result of appellee's bribing a fellow county commissioner so that appellee might obtain a majority vote to purchase a 48-acre parcel of real property known as the soccer complex. The state's sole argument is that the trial court's order is not supported by competent substantial evidence and that, therefore, the order constitutes an abuse of discretion. Having carefully reviewed the record, we conclude that the trial court's order is amply supported by the evidence and, therefore, does not constitute an abuse of discretion. Accordingly, we affirm.
Following a jury trial, appellee, an Escambia County Commissioner, was convicted of bribery and unlawful compensation or reward for official behavior in connection with a scheme to have the Escambia County Commission purchase the soccer complex property. We subsequently affirmed those convictions; reversed the trial court's ruling that the county was not a "victim" for purposes of section 775.089, Florida Statutes (2002), and as a result was not entitled to restitution; and remanded so that the state might have an opportunity to prove that the county had suffered a loss as the result of appellee's crimes, and the amount of any such loss. Childers v. State, 936 So.2d 585 (Fla. 1st DCA) (en banc), review denied, 939 So.2d 1057 (Fla.2006).
On remand, the trial court held a restitution hearing, at which considerable testimony was presented and evidence offered. The state contended that, as the victim, Escambia County was entitled to restitution consisting of the difference between what the county had paid for the property and what it received when it sold the property ($1,090,706.50), plus costs attributable to maintaining the property and having it appraised ($33,524.02). Appellee countered that the property was sold for less than its fair market value and that, had it instead been sold for what it was worth, the county would have netted a profit rather than a loss. Both the state and appellee presented testimony from real property appraisers regarding the value of the soccer complex property. As anybody who has had any appreciable exposure to eminent domain proceedings knows, real property appraisal is an art, not a science. In eminent domain proceedings, the differences in value asserted are frequently great, and the outcome usually turns on which of two or more property appraisers the jury finds to be more credible. This is precisely what occurred in this case.
The state presented the appraiser who had appraised the property when the county decided to sell it. He testified that, in his opinion, the property was worth only $2,450,000. Based on that appraisal, the county had sold the land for $2,925,000. Appellee's appraiser, on the other hand, testified that, in his opinion, the county's appraiser's valuation was low. He believed that, had the county been patient, it *414 could have sold the property for much more  perhaps as much as $7,000,000.
The trial court subsequently denied the request for restitution, concluding that any loss sustained by the county had not been "caused by [appellee's] criminal activities" but, rather, that "the more persuasive evidence is [that] the [c]ounty did not take advantage of traditionally accepted measures to get the highest bid on resale. If it had done so, the evidence indicates it very likely could have made a profit, perhaps a substantial one, on the conveyance." This appeal follows.
For purposes of restitution, the burden rests with the state to prove the amount of the victim's loss by the greater weight of the evidence. § 775.089(7), Fla. Stat. (2007); Koile v. State, 902 So.2d 822, 824 (Fla. 5th DCA 2005). Moreover, "[r]estitution must be proved by substantial competent evidence." Koile, 902 So.2d at 824 (citations omitted). Finally, as a general matter, the standard of review for a restitution order is abuse of discretion. Johnson v. State, 942 So.2d 415, 416 (Fla. 2d DCA 2006).
It is apparent from the transcript of the hearing that the trial court listened closely to the testimony. It is, likewise, apparent that the trial court's order was based upon its conclusion that the state had failed to prove that the county had lost any amount because of appellee's crimes. This conclusion is equally clearly based on the trial court's implicit finding of fact that appellee's appraiser's testimony regarding the value of the property was more persuasive, and that, based upon that testimony, the county had not lost anything on account of appellee's crimes. Rather, it is clear that the trial court concluded, again based on that testimony, that the county's loss was attributable to poor business judgment. Our reading of the transcript satisfies us that the trial court's factual findings are amply supported by the evidence. Such being the case, the trial court's holding cannot possibly constitute an abuse of discretion. See Trease v. State, 768 So.2d 1050, 1053 n. 2 (Fla.2000) (quoting Huff v. State, 569 So.2d 1247, 1249 (Fla.1990), for the proposition that "[d]iscretion is abused only `when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court'"). Accordingly, we affirm.
AFFIRMED.
PADOVANO, J., concurs; HAWKES, J., dissents with written opinion.
HAWKES, J., Dissenting.
I believe the majority mischaracterizes both the State's argument and the trial court's order. Accordingly, I must dissent.
The State made two arguments on appeal. Contrary to the majority's assertion, both were issues of law, and neither is addressed by the majority opinion.
First, the State correctly argued the basis upon which the trial court denied restitution, i.e., the County "did not take advantage of traditionally accepted measures to get the highest bid on resale," was not supported by law or fact. What the phrase "traditionally accepted measures" means is unknown. The phrase is not defined by the trial court, the majority, or Florida case law, and is certainly devoid of statutory support.
Evidently, the County could have made a "substantial" profit had it added additional acreage to its parcel, and retained the property for a couple of years until the market was more favorable. The trial court and the majority find support for *415 this conclusion by relying on a sale and appraisal that occurred 18 months after the County sold the property (25 months after listing the property), and after 13 acres of road frontage had been added to the parcel.
Although "[r]estitution has not abandoned the concept of mitigation of damages," J.K. v. State, 695 So.2d 868, 869 (Fla. 4th DCA 1997), the trial court did not cite, nor has my research revealed, any authority for the proposition that a victim seeking restitution must overcome every speculative proposition made by a defense expert as to how damages may have been mitigated.
The record shows the County owned property for which it had no use. A decision was made to explore selling the property. A request for proposals was issued. A qualified real estate agent was retained, and the property was listed for the price the County paid for the property. After the passage of a couple of months, and the receipt of one disappointing offer for only a portion of the property, the County paid for the property to be reappraised. Based on the reappraisal, the price was reduced. Even after reducing the price approximately 25%, the property remained on the market for an additional five months before it finally sold at a substantial loss.
Every decision made by the County was in accordance with statute and occurred at public hearings. The substantial profit the majority and trial court reference is both speculative and illusory. In fact, no one recognized the "substantial" profit until the passage of two years and the addition of 13 acres of road frontage. The County was not required to hold the property indefinitely, hoping its market value would increase. Restitution cannot depend on hindsight that there may have been a better result had the victim made different choices following the defendant's criminal conduct.
To support its conclusion that the trial court simply weighed the testimony and found the State's case lacking, the majority selectively quotes that portion of the trial court's order stating the County's loss was not "caused by" the defendant's criminal conduct. The majority's quotation is misleading. The full phrase used in the trial court's order was that the loss was not "actually caused by" the defendant's criminal conduct. The trial court applied the wrong legal standard.
To ascertain whether a restitution award is required, the trial court must determine whether: (1) The loss or damage was directly or indirectly causally connected to the offense; and, (2) The loss or damage bears some significant relationship to the offense, i.e., was foreseeable. See § 775.089(1)(a), Fla. Stat.; Glaubius v. State, 688 So.2d 913, 915 (Fla.1997). If these two elements are present, restitution must be ordered. See § 775.089(1)(a)1.-2., Fla. Stat.
Applying the causation elements to the case at bar, to obtain restitution, the State was required to prove by a preponderance of the evidence that: (1) The County's loss from the sale of the property was at least indirectly related to the bribe induced votes the defendant procured to obtain Commission authority to purchase the property, and (2) It was foreseeable that, when purchasing votes to obtain real estate, a subsequent resale may be at less than the price paid. In short, if it takes a bribe to purchase the property, a subsequent good-faith, arms-length sale of the property may result in a lower price.
The trial court erred as a matter of law by applying the wrong legal standard to conclude restitution was not warranted because the defendant did not "actually cause" the County's loss. The trial court compounded its legal error by creating the additional burden that the County prove it *416 used "traditionally accepted measures" to sell the property before being entitled to restitution. We may have had some insight into the meaning of this phrase had the trial court complied with the statutory requirements of stating on the record "in detail" its reasons for denying restitution, and providing "clear and compelling reasons not to order restitution." § 775.089(1)(a)-(b)1., Fla. Stat. The trial court's failure to comply with these statutory requirements is but another legal error committed by the trial court and ignored by the majority.
The State also contended the trial court's order failed to address restitution for the County's cost of maintenance and repair of the property. A review of the trial court's order reveals the State is again, correct. The trial court is required to "make findings as to causation for each discrete item of restitution." See Bellot v. State, 964 So.2d 857, 860 (Fla. 2d DCA 2007). The majority opinion does not mention the trial court's failure to address the restitution sought by the State on this ground. For the foregoing reasons, I would reverse.