859 So.2d 560 (2003)
Jean Alfredo BERNARD, Appellant,
v.
STATE of Florida, Appellee.
No. 5D02-3760.
District Court of Appeal of Florida, Fifth District.
November 21, 2003.
*561 Richard S. Rhodes, Orlando, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Mary G. Jolley, Assistant Attorney General, Daytona Beach, for Appellee.
ORFINGER, J.
Jean Alfredo Bernard appeals a restitution order entered following his plea of nolo contendere to dealing in stolen property, specifically a cable television box belonging to Time Warner Communications.[1] Such boxes allow subscribers to access pay-per-view programming.
At the restitution hearing, a security manager for Time Warner testified that ten cable boxes, three of which had stickers identifying them as the property of Time Warner, and four remote controls, were recovered from Bernard's apartment. Time Warner requested restitution of $830,400 for loss of cable service revenue. Over Bernard's hearsay objection, the Time Warner security manager testified that Bernard told a non-testifying police officer that he sold twenty cable boxes over a five-year period. No evidence was introduced that these twenty cable boxes were the property of Time Warner or that they were ever used to receive unauthorized cable signals. Time Warner calculated its damages by assuming that all twenty cable boxes were used on pay-per-view channels twenty-four hours a day, at a rate of $240 per day, from the time of Bernard's arrest to the date of the hearing. The only evidence that any cable box was used was Bernard's testimony in court that he used one cable box for about one month. Defense counsel objected to the inclusion of loss of cable service revenue as being outside the scope of what Bernard had been charged with and pled to. Following the hearing, the trial court entered a restitution order totaling $832,114.28.
To its credit, the State filed a timely Motion to Correct Sentence, pointing out that Bernard had been charged with and pled nolo contendere to a crime regarding only one cable box. The State's motion correctly observed that the trial court imposed restitution for the loss of cable service revenue relating to the nineteen other cable boxes Bernard allegedly admitted selling. The State argued that the restitution order should be amended to reflect only the amount lost as a result of the single cable box referenced in the information. In support of its argument, the State cited Noland v. State, 734 So.2d 464, 466 (Fla. 5th DCA 1999), which held that restitution cannot be ordered for a theft not encompassed within the charge contained in the information or for items outside the scope of the criminal prosecution. Therefore, the State argued that the restitution order relating to the loss of cable service revenue should be applied only to the theft of cable services for the single cable box Bernard admitted hooking up. Accordingly, the State concluded that the restitution award should be reduced to $43,634.28.[2] Because the trial court failed to timely rule on the State's Motion to Correct Sentence, the motion was deemed denied and this *562 appeal ensued. See Fla. R.Crim. P. 3.800(b)(2).
The restitution statute, section 775.089(1)(a), Florida Statutes (2002), provides in pertinent part:
In addition to any punishment, the court shall order the defendant to make restitution to the victim for:
1. Damage or loss caused directly or indirectly by the defendant's offense; and
2. Damage or loss related to the defendant's criminal episode.
Before ordering restitution, the trial court "must find that loss or damage is causally connected to the offense and bears a significant relationship to the offense." Glaubius v. State, 688 So.2d 913, 915 (Fla. 1997). The causation and significant relationship tests work in conjunction with, and not independently of, each other. See State v. Williams, 520 So.2d 276, 277 (Fla. 1988). The trial court has the discretion to take into account all appropriate factors in arriving at a fair amount that will adequately compensate a victim for his or her loss and further the purposes of restitution. State v. Hawthorne, 573 So.2d 330, 333 (Fla.1991).
While it is the State's burden to present evidence to support the value of restitution, see Glaubius, 688 So.2d at 915-16, where competent evidence exists to support a restitution award, an appellate court will not interfere with the reasonable exercise of the trial court's discretion. Hercule v. State, 655 So.2d 1256, 1257 (Fla. 3d DCA 1995). However, a defendant cannot be required to pay restitution in excess of the damage his criminal conduct caused the victim. Fresneda v. State, 347 So.2d 1021, 1022 (Fla.1977).
Bernard pled nolo contendere to dealing in one stolen cable box. Bernard was not charged under section 812.15, Florida Statutes (2002), which makes the unauthorized reception of cable television services a crime. However, the trial court was authorized to order restitution for the loss or damage "causally connected to the offense and bearing a significant relationship to the offense." Glaubius, 688 So.2d at 915.
The trial court did not abuse its discretion by ordering restitution for Time Warner's lost revenue related to Bernard's admitted use of one stolen cable box. See Watson v. State, 699 So.2d 835 (Fla. 3d DCA 1997) (holding that victim's lost income was caused by theft of mixing boards and was proper item for restitution). Notwithstanding, we conclude, and the State conceded at oral argument, that the $788,880 award for loss of cable service revenue relating to the additional nineteen cable boxes must be reversed. Because Bernard was only charged in connection with selling one cable box, he can only be ordered to pay restitution for damages stemming from that offense. See Faulkner v. State, 582 So.2d 783 (Fla. 5th DCA 1991) (holding that defendant charged with dealing in stolen property consisting of one rifle could not be ordered to pay restitution for second, unrecovered rifle; loss of second rifle was not caused by charged offense); Noland, 734 So.2d at 466 (stating that restitution cannot be ordered for a theft not encompassed within the charge contained in the information or for items outside the scope of the criminal prosecution). Therefore, the amount of the restitution ordered relating to theft of cable services should be reduced by $788,880, the amount attributable to the nineteen boxes not charged in the information.
Any loss of cable service revenue stemming from Bernard's criminal episode with the single cable box charged in the information arguably falls within the scope of section 775.089(1)(a)2. as "[d]amage or *563 loss related to the defendant's criminal episode." However, even as to that single box, ordering restitution for the loss of service from the date of Bernard's arrest to the date of his plea was an abuse of discretion. After Bernard was arrested, the cable box was recovered. Consequently, no one could have been illegally intercepting cable services with the box following his arrest.
Restitution awards cannot be speculative. See Glaubius, 688 So.2d at 913. The only evidence in the record of anyone actually intercepting cable services with any of the cable boxes was Bernard's testimony that he hooked up his stolen box for about one month. In the absence of any other time period being established, and based upon Bernard's testimony, we conclude that the court should properly order restitution based on thirty days of service at $240 per day[3] for a total of $7,200.
We reverse in part the restitution order and remand with instructions to reduce the amount of the restitution award to a total of $8,914.28.[4]
AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.
SAWAYA, C.J., and MONACO, J., concur.
NOTES
[1] § 812.019(1), Fla. Stat. (2001).
[2] This amount reflects $41,520 for the theft of cable services on the single cable box charged in the information and includes the amount of investigatory costs of $1,714.28, as set forth in the original restitution order.
[3] It is with some hesitation that we approve the $240 per day rate for the loss of cable service. We do so because pay-per-view charges are for access, and do not depend upon actual use or viewing. Bernard had access to such services for thirty days regardless of his actual usage.
[4] This amount reflects the sum of the investigative costs in the amount of $1,714.28, and $7,200 for loss of revenue for cable services on the single cable box for thirty days.