972 So.2d 1079 (2008)
Donna SCHNEIDER, Appellant,
v.
STATE of Florida, Appellee.
No. 5D07-204.
District Court of Appeal of Florida, Fifth District.
January 25, 2008.
James S. Purdy, Public Defender, and Susan A. Fagan, Assistant Public Defender, Daytona Beach, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Jeffrey R. Casey, Assistant Attorney General, Daytona Beach, for Appellee.
*1080 GRIFFIN, J.
Appellant, Donna Schneider ["Appellant"] appeals an order of the lower court awarding $8,100.00 in restitution. We reverse.
Appellant was charged by amended information with organized fraud for stealing from her employer, Dr. Robert Kitos. Appellant entered into a best interest plea and was sentenced to one year of community control, followed by four years of probation. Appellant was also ordered to pay $8,100.00 in restitution for professional services incurred by Dr. Kitos and his wife, Melinda Kitos, to defend a pretrial defense discovery request for their 2001 and 2002 tax returns.
Prior to entering into the plea, Appellant had filed a motion for discovery and a subpoena duces tecum for the personal and business tax records of Dr. and Mrs. Kitos. The motion claimed the tax returns were needed to show that Appellant did not misappropriate the funds and that the Kitoses actually wrote off those funds on their taxes. Because Dr. Kitos wished to protect his privacy and did not want the tax returns discovered, he hired private counsel and moved for a protective order to prevent disclosure of the tax records. At a hearing on the motion, the trial court ruled that form 4684 of the tax return for the tax year 2001 and the schedule C from both the 2001 and 2002 returns were discoverable, but the remaining portions of the returns were not discoverable.
At the restitution hearing, the State requested an award of the legal and accounting fees incurred by Dr. Kitos in prosecuting the protective order motion. The State argued that the fees were causally connected to the offense and that the costs were an indirect result of Appellant's crime. Appellant argued that the decision to hire private counsel was Dr. and Mrs. Kitoses' and was not brought about by Appellant's criminal conduct but by their own election to incur fees to protect their privacy.
The trial court ruled that the legal expenses incurred by the Kitoses were causally related to Appellant's organized fraud offense. We agree with Appellant that these expenses were not caused either directly or indirectly by the offense and reverse.
Section 775.089(1)(a), Florida Statutes (2006), provides that:
In addition to any punishment, the court shall order the defendant to make restitution to the victim for:
1. Damage or loss caused directly or indirectly by the defendant's offense; and
2. Damage or loss related to the defendant's criminal episode, unless it finds clear and compelling reasons not to order such restitution. Restitution may be monetary or nonmonetary restitution.
The term "victim" as used in this statute means "each person who suffers property damages or loss, monetary expense, or physical injury or death as a direct or indirect result of the defendant's offense or criminal episode. . . ." § 775.089(1)(c), Fla. Stat. (2006).
To order restitution under the statute, the court must find that the loss or damage is causally connected to the defendant's offense. See Glaubius v. State, 688 So.2d 913 (Fla.1997); see also Hall v. State, 760 So.2d 972 (Fla. 5th DCA 2000); Cheek v. State, 700 So.2d 731 (Fla. 5th DCA 1997). Only those damages or losses which flow from defendant's criminal activity may be assessed as restitution. See Chapman v. State, 733 So.2d 1055 (Fla. 2d DCA 1999). For restitution to be deemed reasonable, it must bear a significant relationship to the offense of which the defendant is convicted, and one factor to be *1081 considered in this regard is whether there is a causal connection between the criminal conduct and the loss claimed by the victim. See L.H. v. State, 803 So.2d 862, 863 (Fla. 4th DCA 2002). The causation and significant relationship tests involved in determining restitution for an offense work in conjunction with, and not independently of, each other. See § 775.089(1)(a), Fla. Stat. (2006); Bernard v. State, 859 So.2d 560 (Fla. 5th DCA 2003).
In the First District Court of Appeal's decision in Boulais v. State, 706 So.2d 365 (Fla. 1st DCA 1998), the court held that investigative costs paid by an employer to an accounting firm, to insurance adjusters and to an office worker who was hired to help find files lost during the period of the defendant's employment were awardable. The court, however, rejected services contracted for after the crime was discovered and documented.
Lost wages and similar expenses of victims, including costs resulting from participating in court proceedings have been found to be improper for an award of restitution. See J.S. v. State, 717 So.2d 175 (Fla. 4th DCA 1998). In Martel v. State, 596 So.2d 100 (Fla. 2d DCA 1992), the Second District rejected a restitution award for travel and accommodation expenses the owner of the stolen property incurred upon returning home to Florida from North Carolina to investigate after learning of some of the thefts. The appellate court held that these expenses were too remote.
The State claims the legal fees incurred in this case are similar to investigative costs which are properly awarded as restitution. In support of its position, the State relies on Mayer v. State, 632 So.2d 678 (Fla. 5th DCA 1994) and Glaubius, 688 So.2d 913. In both of those cases it was held that investigative costs for the purpose of discovery and documentation of the crime were properly awarded as restitution. The present case, however, does not involve investigative costs. To the contrary, the issue in the protective order was what evidence was not needed, not what was needed.
Here, the fees awarded were not caused by the offense. The cause of the incurring of fees was the optional decision of Dr. Kitos and his wife to prevent disclosure of their tax returns. Tax returns are not privileged in Florida. See Fryd Constr. Corp. v. Freeman, 191 So.2d 487, 489 (Fla. 3d DCA 1966) (observing that copies of income tax returns not privileged and may be used in state court proceedings where relevant). Had Dr. and Mrs. Kitos not hired counsel and accountants, their tax returns may or may not have been ordered produced based on relevancy, but the professional fees they incurred did not flow directly or indirectly from the appellant's offense. The dissent contends that the expenditure of fees came about because the State refused to take action to protect the Kitoses' privacy. But the Kitoses' privacy was not the State's concern. The decision to try to avoid public disclosure of tax returns was the Kitoses. They could have produced the returns or even the portions found relevant by the court, but elected instead to oppose any production. Even so, they were only partly successful. The State necessarily argues, however, that Dr. and Mrs. Kitos are entitled to restitution whether they were successful in their motion for protective order or not. To award as restitution such expenses voluntarily incurred in the course of discovery in the criminal case is beyond the contemplation of the restitution statute.
REVERSED and REMANDED.
PERRY, B., Associate Judge, concurs.
PLEUS, J., dissents, with opinion.
*1082 PLEUS, J., dissenting.
I disagree with the far too narrow application of section 775.089 and therefore dissent. The statute at issue here allows a trial court to order restitution to the victims of crime for damages or loss caused directly or indirectly by the defendant or for damages related to the defendant's criminal episode. The amount of the restitution ordered is not at issue.
In my view, the legal and accounting fees awarded as restitution were indirectly caused by the theft of money from Dr. Kitos and were related to the defendant's criminal episode. But for the theft and prosecution of the defendant, and but for the overly-broad subpoena filed by the defendant's attorney, there would have been no need for Dr. Kitos to hire a lawyer and an accountant to explain the privacy issues to the trial court and assist the Court in understanding the relevance, or lack thereof, of the tax returns.
The defendant, who was the office manager for Dr. Kitos, pled guilty to making personal purchases using the office credit card and issuing business checks to cover personal expenses. The majority opinion gives the impression that all this poor defendant simply wanted was to look at the victim's tax returns to see if there was anything she might use in her defense. It is a mystery to me how anything on a personal tax return could have relevance on the issue of guilt. The defendant claims the tax returns will show that all the property she stole was actually legitimate purchases for the business. That is truly a stretch beyond comprehension. Indeed, the trial court found that the entire tax returns of Dr. and Mrs. Kitos were not relevant or subject to discovery or calculated to lead to discoverable information.
It is important to look at the context in which this discovery dispute arose and the sequence of events which caused the problem. The discovery motion is styled "Defendant's Amended Motion for Production of Tax Returns and Patient Records and Payment Records for Patient." Under the criminal procedure rules, the subpoena cannot be served on a non-party without leave of court. The trial court properly ordered a hearing on the motion. After the hearing, the trial court authorized a subpoena for Dr. Kitos' tax returns for the years 2001 and 2002. Authorizing the subpoena was not the equivalent of a finding that those records were relevant. The request for the records of a patient, Rick Berry, was denied.
After the subpoena was issued, Dr. Kitos was told by the State that this was out of its league, and Dr. Kitos and Mrs. Kitos would have to get independent counsel. When the State refused the Kitoses' request to file a motion for protective order addressed to the subpoena "duces tecum without deposition, Dr. Kitos was left with no alternative but to hire outside counsel to protect his privacy rights, the privacy rights of his wife, and the rights of his patient, Rick Berry. The need was directly caused by the overly-broad subpoena and the refusal of the' State Attorney's office. The Kitoses had every right and a legitimate need to hire outside counsel.
It is equally important to understand the response of Dr. Kitos' outside counsel. Fie suggested that the court conduct an in camera review of the tax returns to determine whether they actually contained any information relevant to the case. The trial court properly recognized that it must decide whether the defendant's need for the documents outweighed the victims' privacy rights. The need for such an evaluation was doubly important because Dr. Kitos and Mrs. Kitos file joint returns. Dr. Kitos further suggested to the court that the only information relevant to his medical practice was on Schedule C of the returns. *1083 Finally, Dr. Kitos asked the court to determine what, if any, portions of the returns should be produced and enter a Protective Order as to the other portions of the subject returns and the confidential information contained therein.
The trial court considered the motion and the testimony of the Kitoses' CPA. It ruled that the defendant was entitled only to Schedule C of the returns. The order went on to grant the ore tenus motion made on behalf of Dr. and Mrs. Kitos at the hearing to limit and prohibit the defendant from questioning or making any inquiry of Dr. or Mrs. Kitos on deposition, or otherwise, except for the Schedule Cs.
The most compelling argument as to why restitution is mandated in this case is set forth in the Kitoses' Motion For Protective Order, which reads as follows:
It appears that Defendant's efforts to obtain Dr. Kitos' income tax records is not actually an effort to obtain information she can use to defend the charge against her. Defendant has repeatedly threatened to sue Dr. Kitos in retaliation for reporting her activities to law enforcement for investigation. (See letter from Defendant's counsel dated May 6, 2002, attached as Exhibit "A"). Therefore, Defendant's motion, and the resulting subpoena, is in reality an improper and premature effort to attempt to obtain financial discovery she can use in furtherance of her threat of future civil litigation.
Exhibit A reads in part:
I represent Donna Schneider. I understand there was a tape made of the hearing which was held on April 30, 2002, at 3:00 p.m. That tape contains relevant information for a criminal charge filed by the doctor's office. As part of the interrogation by the officer, the doctor's wife who was testifying made inconsistent statements with the statements that she made to a law enforcement agency. I now want to preserve those statements for use in the criminal prosecution and in the subsequent civil prosecution for wrongful arrest and prosecution against Dr. Kitos and his wife.
It does not take a genius to figure out what was really going on here and the actual motive for the overly-broad subpoena. First, you steal from the boss and then, when caught, you suggest a law suit if the prosecution is not dropped.
The trial judge acted wisely and properly. Undoubtedly, he understood what was really going on. He also found a significant causal relationship in the offense charged and the sequence of events during the discovery process and the Kitoses' attempt to protect their privacy interests.
Restitution serves a broader purpose than mere compensation of the victim. It also serves the rehabilitative, deterrent, and retributive goals of the criminal justice system. The narrow reading of the restitution statute by the majority flies in the face of the stated purpose of restitution.
But for the defendant's offense and her fishing expedition in defense thereof, the costs of reviewing the tax records and defending against the release of the improperly subpoenaed material would not have been incurred. The trial court's finding that these costs were causally connected to the offense is supported by competent, substantial evidence and should not be disturbed.