PER CURIAM.
Holly Strout appeals from a $51,906.49 restitution order entered in a criminal case following hér plea to a charge of removing or concealing a minor (her daughter) in violation of a court order. Other related charges were dropped in connection with the plea agreement. The charges arose after Strout absconded to Germany with her four-year-old son and ten-month-old daughter in November of 1999, during the pendency of paternity and dependency *1054 proceedings in Orange County. We affirm in part and reverse in part.
Prior to Strout leaving with the children, there had been temporary custody orders in place, as part of the dependency case, providing for custody of the son with his father, Kevin Campbell (and granting Strout visitation), and maintaining custody of the daughter with Strout (but granting Campbell visitation, even though his paternity of the daughter had not yet been finally determined). After Strout absconded with the children, Campbell had his attorney secure an emergency custody order in family court, as part of the paternity action, placing both children with him, which Strout appealed (unsuccessfully), in absentia.
After Strout took the children, Campbell contacted local law enforcement, who involved the FBI. It took approximately a year for Campbell to locate the children in Germany. He then unsuccessfully pursued return of the children, in Germany, under the Hague Convention, Years later, in 2012, Strout voluntarily returned to the United States with both children — the son then seventeen years old and the daughter then thirteen years old. Upon her return, Strout was arrested on the Orange County charges and the children were placed in Campbell’s custody. Strout and Campbell have been involved in litigation in the family division of the Orange County Court, since 2012, regarding custody of the daughter.
The restitution was ordered to reimburse Campbell for expenses he incurred in seeking return of the children, the custody battle with Strout, and counseling costs, as follows: $1,000 for Campbell’s attorneys’ fees for German counsel in connection with the Hague Convention proceeding;. $11,156.59 for Campbell’s attorneys’ fees in connection with Strout’s appeal of the emergency custody order; $37,331.26 for Campbell’s attorneys’ fees paid or owed primarily for the continuing litigation concerning the daughter’s custody; $1,845 for counseling for the daughter; and, $573.64 for out-of-pocket expenses that Campbell incurred in trav-elling to Germany in an effort to obtain the children’s return. On appeal, Strout challenges the restitution award in its entirety, on grounds that Campbell was not a “victim” or, alternatively, that the expenses were not sufficiently related to the offense of conviction.
“We review an order of restitution using an abuse of discretion standard.” J.D.H. v. State, 931 So.2d 241, 242 (Fla. 5th DCA 2006). (citations omitted). “If the award, of restitution is supported by competent evidence, an appellate court should not interfere with the trial court’s, reasonable exercise of discretion.” Id. (citing Bernard v. State, 859 So.2d 560, 562 (Fla. 5th DCA 2003)). Section 775.089, Florida Statutes, requires a defendant to make restitution to a victim for “[djamage or loss caused directly or indirectly by the defendant’s offense,” and “[d]amage or loss related to' the defendant’s criminal episode.” § 775.089(l)(a)1.2.,. Fla. Stat. (1999). The term “victim” as used in this statute means “each person who suffers property damage -or loss, monetary expense, or physical injury or death as a direct or indirect result of the defendant’s offense or criminal episode ....”§ 775.089(l)(c), Fla. Stat, (1999). Prior to ordering restitution, a trial court must determine that the damage or loss for which restitution is ordered was. caused directly or indirectly by the defendant’s offense, and that it bears a significant relationship to the offense. Socorro v. State, 901 So.2d 940, 941 (Fla. 5th DCA 2005); Bernard, 859 So.2d at 562. “Stated differently, if ‘but for’ the criminal episode, damages would not have been incurred by the victim, restitution is proper.” *1055 Socorro, 901 So.2d at 941. The state has the burden of proving each element, by a preponderance of the evidence. See, e.g., Dyer v. State, 622 So.2d 1158 (Fla. 5th DCA 1993).
We agree with the- State; that Campbell was a-victim as that term is used in the relevant statutes* because he suffered “monetary expense” as a direct result of Strout removing and concealing their daughter (the expenses of locating her and attempting to secure her return through the Hague Convention proceedings), cf. Arling v. State, 559 So.2d 1274 (Fla. 2d DCA 1990) (attorney’s fees incurred in interpleader, action by victim of dealing in stolen property crime is reasonably foreseeable to.a defendant who sells stolen property and is therefore recoverable as restitution), and as an indirect result of Strout’s crime (the. counselling later needed for the daughter and Campbell to reunite). Cf. Drye v. State, 691 So.2d 1168 (Fla. 1st DCA 1997) (“[T] he trial court could properly order appellant to pay for the victim’s future counseling costs.”).
However, Strout' is correct that Campbell’s attorneys’ fees associated with the custody proceedings are not sufficiently causally connected to the charged crime to be recovered under the restitution statute. See, e.g., Schneider v. State, 972 So.2d 1079, 1080 (Fla. 5th DCA 2008); L.H. v. State, 803 So.2d 862, 863 (Fla. 4th DCA 2002); J.S. v. State, 717 So.2d 175, 176 (Fla. 4th DCA 1998): Here, Campbell had not established paternity of his daughter when Strout, who had legal custody the time, committed the crime of removing and concealing her in violation of a dependency court order. His lawyer was representing him in ' the' paternity matter—to' secure parental rights—and as a nón-offending parent dealing with custody and visitation in the dependency proceeding, ' Campbell would have had to continue litigating the custody issue .irrespective of whether Strout removed the child. For example, although Campbell-secured custody as part of the paternity action on an emergency basis (so that he could quickly secure cooperation from law enforcement in locating the children), there would have been a final order in that case—from which Strout could have .appealed. ■ As such, we do not see anything in this.record establishing that appeal costs from the paternity action would not have been incurred “but for” the crime. Additionally, Strout was convicted of concealing and removing the daughter. Yet, a good portion of the attorneys’ fees awarded were incurred after Strout voluntarily returned the child to the United States. And, as previously discussed, Campbell surely would have continued incurring attorneys’ fees relating to the custody issue irrespective of Strout’s crime. Finally, while it appears that some of the services provided by Campbell’s primary local attorney may 'have been related to the Hague Convention proceeding, or might otherwise have been appropriate for restitution, the State simply presented all of these fees as relating to custody issues—giving the trial1 court no apparent way to "separate out fees proper for restitution from those without a sufficient causal connection to the crime. For these reasons, we find that the trial court abused its discretion in awarding the local attorneys’ fees.
In summary, we affirm the award of $1,000 for Campbell’s attorneys’ fees for German counsel in connection with the Hague Convention proceeding; $1,845 for counseling relating to the daughter’s reunification with Campbell; and, $573.64 for out-of-pocket expenses that-Campbell incurred in travelling to Germany. We reverse the award of $11,156.59 for Campbell’s attorneys’ fees in .connection with Strout’s appeal of the initial custody order, *1056 as well as the $37,331.26 in attorneys’ fees justified primarily as relating to custody issues. We remand for entry of a new restitution order consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART and REMANDED.
LAWSON, C.J., COHEN and LAMBERT, JJ., concur.